**UNITED STATES of America, Appellee,**

v.

**Sylvestro NANFRO, Antonino Fazio, also known as Nino, & James W. McGrath, Defendants,**

**Robert Ingrao, also known as Bobby, Defendant–Appellant.**

**No. 1205, Docket 94–1455.**

United States Court of Appeals, Second Circuit.

Argued June 7, 1995.

Decided Aug. 28, 1995.

Cheryl J. Sturm, West Chester, PA, for defendant-appellant.

Nancy J. Northup, Asst. U.S. Atty., New York City (Mary Jo White, U.S. Atty. S.D.N.Y., Douglass B. Maynard, Asst. U.S. Atty., New York City, of counsel), for appellee.

Before: MINER, LEVAL, and CABRANES, Circuit Judges.

PER CURIAM:

Defendant-appellant Robert Ingrao appeals from a judgment entered in the United States District Court for the Southern District of New York (Patterson, J.) after a jury trial, convicting him of conspiring to distribute and to possess with intent to distribute cocaine and heroin, in violation of 21 U.S.C. § 846, and sentencing him principally to a prison term of 120 months.

Ingrao was tried along with two of his co-conspirators, Sylvestro Nanfro and Antonino Fazio. At trial, the government established that, between December of 1988 and January of 1991, Ingrao had an agreement with Nanfro and Fazio to deal in wholesale quantities of heroin. On some occasions, Ingrao supplied heroin to Nanfro and Fazio, who worked as a team. On other occasions, Ingrao obtained heroin from the two men. The proof focussed on two transactions: (1) a deal that occurred during the week of February 12, 1990, in which Ingrao obtained 500 grams of brown heroin from Nanfro and Fazio for sale to a man named Julio Rivera, and (2) a deal that culminated in Ingrao's arrest on February 23, 1990, in which Ingrao was to obtain 500 grams of white heroin for sale to Rivera and another man.

Ingrao conducted much of his drug business from a telephone located in the Pine Tavern, a restaurant situated in the Bronx. During the course of its investigation, the government obtained a court-authorized wiretap on this telephone. The government eventually obtained a number of extensions for the wiretap authorizations relating to the Pine Tavern telephone. In addition, the government obtained a court-authorized wiretap for the automobile belonging to Ingrao's co-conspirator, Nanfro, and also obtained a number of extensions for this authorization.

Prior to trial, Ingrao moved to suppress the evidence gained through use of the wiretaps, contending that the Deputy Assistant Attorneys General who signed the wiretap authorizations were not properly designated to do so. He contended that the statute governing wiretaps required that those Deputy Assistant Attorneys General who authorize wiretaps be designated by name. In this case, Ingrao noted, the Attorney General had designated them by position only. The district court denied the motion to suppress.

The statute governing wiretaps and their authorization, Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title III"), provides that:

The Attorney General, Deputy Attorney General, Associate Attorney General, or any Assistant Attorney General, any acting Assistant Attorney General, or *any Deputy Assistant Attorney General or acting Deputy Assistant Attorney General in the*

*Criminal Division specially designated by the Attorney General,* may authorize an application to a Federal judge ... for ... an order authorizing or approving the interception of wire or oral communications....

18 U.S.C. § 2516(1) (emphasis supplied). The purpose of restricting the authorization power in this manner is "to assure that an accountable and identifiable person actually reviews wiretap requests." *United States v. Anderson,* 39 F.3d 331, 339 (D.C.Cir.1994), *modified in part on other grounds,* 59 F.3d 1323 (D.C.Cir.1995) (*en banc* ).

On May 24, 1989, Attorney General Dick Thornburgh issued Order No. 1348–89, in which he explicitly designated "any Deputy Assistant Attorney General of the Criminal Division" of the Department of Justice to authorize Title III wiretap applications. Pursuant to that designation, a Deputy Assistant Attorney General authorized each of the wiretap applications submitted during the investigation of Ingrao and his co-defendants. On appeal, Ingrao takes issue with the blanket designation issued by the Attorney General, and reiterates his contention that "[t]he phrase 'specially designated' has to mean specially designated by name." We disagree.

The clear text of the statute should be our central guide to Congress's intentions, *see Good Samaritan Hosp. v. Shalala,* —— U.S. ——, ——, 113 S.Ct. 2151, 2157, 124 L.Ed.2d 368 (1993), and we believe that, had Congress intended that Deputy Assistant Attorneys General be designated by name rather than by position, it would have written that requirement into the text. In addition, we are persuaded by *United States v. Citro,* 938 F.2d 1431 (1st Cir.1991), *cert. denied,* 504 U.S. 931, 112 S.Ct. 1997, 118 L.Ed.2d 593 (1992), where the court was presented with the same argument that Ingrao raises here, and responded:

> Section 2516(1) does not state that the Attorney General must designate officials by name. Identification by position is entirely consistent with the legislative history, which indicates that the purpose of the statute was to ensure that intrusive electronic eavesdropping be authorized only by a limited group of responsible federal officials. The statute requires that each of the officials be able to trace his or her explicit authority, by designation, to the Attorney General, an official who, by virtue of presidential appointment and Senate confirmation, is publicly responsible and subject to the political process. The statutory limitations allow the responsible persons to be identified and encourage consistency in the policy with which the electronic surveillance power is used.

*Id.* at 1435–36 (citation omitted); *accord United States v. Torres,* 908 F.2d 1417, 1421–22 (9th Cir.), *cert. denied,* 498 U.S. 948, 111 S.Ct. 366, 112 L.Ed.2d 329 (1990).

We also reject Ingrao's contention that reading the statute to permit a blanket designation renders the phrase "specially designated" superfluous. Under our interpretation, the statute provides the Attorney General with the *power* to designate any or all Deputy Assistant Attorneys General, but does not command that they be designated. Read in this way, the provision provides discretion to the Attorney General, who may decide, based on the circumstances, whether a designation is appropriate.

Finally, we believe that Ingrao's reliance on *United States v. Giordano,* 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974), is misplaced. There, the Court considered the precursor to the current section 2516(1), which conferred the power to authorize wiretaps solely upon the "Attorney General, or any Assistant Attorney General specially designated by the Attorney General." *Id.* at 507–08, 94 S.Ct. at 1823. The Court rejected the argument made by the government that the statute implicitly granted to the Attorney General the power to designate any Department of Justice official to approve wiretap applications. In reaching its conclusion, the Court relied on the clear language of the statute and on Congress's intent to restrict the authorization power to a small group of politically accountable officials. As set forth above, respect for both of these considerations is fully consistent with the conclusion that the present statute permits the designation by position of all Deputy Assistant Attorneys General.

We have considered the appellant's remaining arguments and find them all to be without merit. We therefore affirm the judgment of the district court.