No. 95-3757

United States of America,  *
                            *
        Appellee,           *   Appeal from the United
                            *   States District Court
    v.                      *   for the Western District
                            *   of Missouri.
Stanley Bell,               *
                            *
        Appellant.          *


                    Submitted:  April 9, 1996

                       Filed:  July 24, 1996


Before FAGG, JOHN R. GIBSON, and BOWMAN, Circuit Judges.


BOWMAN, Circuit Judge.


        Stanley Bell pleaded guilty to distributing crack cocaine, a violation of 21 U.S.C. § 841(a)(1) (1994), and to using a firearm during and in relation to a drug-trafficking offense, a violation of 18 U.S.C. § 924(c)(1) (1994). The District Court,[1] after granting a downward departure for cooperation, sentenced Bell to thirty-six months of imprisonment for the drug-trafficking offense followed by a consecutive thirty-six months of imprisonment for the firearm offense. The court also imposed five years of supervised release. Bell timely appeals, and we affirm.

---

[1]The Honorable D. Brook Bartlett, Chief Judge, United States District Court for the Western District of Missouri.

## I.

During the spring of 1994, Bell was the target of an investigation into gang-related activities in Kansas City. During the investigation, the police made two undercover purchases of cocaine base from Bell in early June 1994. Following the undercover drug transactions, a search warrant for Bell's residence was issued by the Circuit Court of Jackson County, Missouri. When the police sought to execute the search warrant, Bell pointed a loaded 9-mm semi-automatic pistol at the entry team. Bell was eventually arrested and a search incident to the arrest revealed that Bell was carrying 9.5 grams of crack cocaine and $1,231 in cash. A briefcase found in the upstairs bedroom contained 520 grams of cocaine and $47,440 in cash. More handguns were found in other bedrooms and on the coffee table in the living room.

On July 20, 1994, an indictment was returned against Bell charging him with federal drug and weapons offenses. A week or so later, Bell received a letter dated July 27, 1994, from the Federal Bureau of Investigation, Forfeiture and Seized Property Unit, notifying him of civil forfeiture proceedings against the $47,440. A similar letter dated July 29, 1994, informed Bell of another civil forfeiture proceeding against the $1,231. Both letters indicated that the forfeiture actions were initiated "for violation of The Controlled Substances Act." Bell did not contest the seizure of the cash and it was forfeited to the United States.

## II.

Bell first argues that the District Court erred in denying his motion to dismiss the indictment based on the Double Jeopardy Clause of the Fifth Amendment. The Double Jeopardy Clause protects against three distinct governmental actions: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple

punishments for the same offense. <u>Schiro v. Farley</u>, 114 S. Ct. 783, 789 (1994). "These protections stem from the underlying premise that a defendant should not be twice tried or punished for the same offense." <u>Id.</u> Bell contends that the government's decision to prosecute him criminally after the civil forfeiture of the money meant that he was twice placed in jeopardy or, at the very least, that he received multiple punishments for the same offense. We disagree. Bell's argument is foreclosed by <u>United States v. Clementi</u>, 70 F.3d 997, 1000 (8th Cir. 1995) (holding jeopardy does not attach to civil forfeiture proceedings), and by <u>United States v. Ursery</u>, 64 U.S.L.W. 4565, 4566 (U.S. June 24, 1996) (holding civil forfeitures do not constitute punishment for purposes of the Double Jeopardy Clause).

### III.

Bell next argues that the District Court erred in denying his motion to dismiss the firearm count under 18 U.S.C. § 924(c)(1), which applies to any person who "during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm." Relying on <u>United States v. Lopez</u>, 115 S. Ct. 1624 (1995), Bell contends that Congress lacks the authority under the Commerce Clause to make the use of firearms in connection with drug trafficking a federal offense. In <u>Lopez</u>, the Supreme Court struck down the Gun-Free School Zones Act of 1990, 18 U.S.C. § 922(q), which made it a federal offense for any individual knowingly to possess a firearm in a school zone. The Court determined that Congress exceeded its Commerce Clause authority when it enacted § 922(q) because mere possession of a gun in a school zone did not substantially affect interstate commerce. The Court reasoned that § 922(q) "by its terms has nothing to do with `commerce' or any sort of economic enterprise, however broadly one might define those terms." <u>Id.</u> at 1630-31. Moreover, the Court also noted that § 922(q) "contains no jurisdictional element which would ensure, through case-by-case inquiry, that the firearm possession in

question affects interstate commerce."  Id. at 1631.  We reject Bell's attempt to extrapolate the reasoning and holding in Lopez to § 924(c)(1).

Section 924(c)(1), unlike § 922(q), is tied to interstate commerce. Section 924(c)(1) is not a free-standing statute; it imposes an additional penalty for using or carrying a firearm during or in relation to the violation of other federal statutes for which there plainly is a nexus to interstate commerce.  One of the statutory predicates for a § 924(c)(1) violation is the commission of a federal drug-trafficking offense, which is defined by § 924(c)(2) as including any felony punishable under the Controlled Substances Act, 21 U.S.C. §§ 801-971 (1994).  In this case, Bell pleaded guilty to violating 21 U.S.C. § 841(a)(1).  It is beyond question that the activity § 841(a)(1) seeks to criminalize--the production and distribution of controlled substances--substantially affects interstate commerce.  Congress has made explicit findings concerning the effect that the drug trade has on interstate commerce.  See, e.g., 21 U.S.C. § 801(2) ("The illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people."); id. § 801(4) ("Local distribution and possession of controlled substances contribute to swelling the interstate traffic in such substances."); id. § 801(6) ("Federal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic.").  In light of these findings, we have held that Congress may regulate both interstate and intrastate drug trafficking under the Commerce Clause.  United States v. Curtis, 965 F.2d 610, 616 (8th Cir. 1992).  Although Bell's argument explicitly challenges the constitutionality of § 924(c)(1), the argument implicitly questions the constitutionality of § 841(a)(1) because § 924(c)(1) derives its

interstate nexus from that underlying federal drug-trafficking provision.

Courts have determined consistently (both before and after <u>Lopez</u>) that § 841(a)(1) is a valid exercise of congressional Commerce Clause power. <u>United States v. Weinrich</u>, 586 F.2d 481, 498 (5th Cir. 1978) (holding § 841(a)(1) constitutional even though it does not require an interstate nexus as element of conviction), <u>cert. denied</u>, 440 U.S. 982 (1979) <u>and</u> 441 U.S. 927 (1979); <u>United States v. Leshuk</u>, 65 F.3d 1105, 1111-12 (4th Cir. 1995) (rejecting <u>Lopez</u> Commerce Clause challenge to § 841(a)(1)). As we previously have held, § 924(c)(1) is a permissible extension of that power. <u>United States v. Brown</u>, 72 F.3d 96, 97 (8th Cir. 1995) (per curiam) ("Because Brown's section 924(c)(1) conviction is based on his section 841(a)(1) drug trafficking offense, which involved an activity that substantially affected interstate commerce, we reject Brown's <u>Lopez</u> challenge.") (internal punctuation omitted), <u>cert. denied</u>, 64 U.S.L.W. 3868 (U.S. July 1, 1996); <u>see also</u> <u>United States v. McMillian</u>, 535 F.2d 1035, 1037 n.1 (8th Cir. 1976) ("We . . . find the defendants' argument that 18 U.S.C. § 924(c) is not within the scope of Congress' power to regulate interstate commerce and therefore reserved to the states by the Tenth Amendment, unpersuasive."), <u>cert. denied</u>, 434 U.S. 1074 (1978). The District Court properly denied Bell's motion to dismiss the firearm count.

**IV.**

Bell also argues that his conviction for using a firearm under § 924(c)(1) should be reversed because the government failed to show "active employment" of the firearm as required by <u>Bailey v. United States</u>, 116 S. Ct. 501, 505 (1995). The Supreme Court explained that the mere storage of weapons in close proximity to drugs or drug proceeds does not amount to active employment and therefore is not "use" within the meaning of the statute, but that "brandishing, displaying, bartering, striking with, and most

obviously, firing or attempting to fire, a firearm" does constitute active employment. Id. at 508. In the present case, it is undisputed that Bell pointed a loaded firearm at the search warrant entry team. This conduct is the type of active employment contemplated by Bailey. Bell's § 924(c)(1) conviction therefore must be sustained.

**V.**

For the foregoing reasons, the judgment of the District Court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-6-