**UNITED STATES Of America, Appellee,**

v.

**Robert GOODWIN, also known as B–Dove; Barbara Shann, also known as Barbara Chacon; Julio Paya, also known as Felipe; Carl Piggott, also known as C; Salim Jamal Breedlove; Edward Everett Strother, also known as "B"; Brian Walden, also known as B.W.; Leon Fields, also known as "Sha"; Ronald Canon, also known as Sidney Ron; Jacqueline Nesbit, also know as Jackie; Barbara Shann, also known as Barbara Chacon; Francine M. Mitchell, also known as Francine Morris, Defendants,**

**Bathsheba Hickson, also known as Puff; Rodney Hampton, also known as Undie; Wayne Rodriguez; Jerry Williams; Fred Moye; Michelle Thomas; James R. Piggott, also known as Blue; and Christian Key, also known as Chris, Defendants–Appellants.**

Nos. 20, 19, 23, 18, 25, 21, 507, Dockets 96–1199, 96–1228, 96–1229, 96–1231, 96–1256, 96–1315, 96–1350 and 96–1751.

United States Court of Appeals, Second Circuit.

Argued Sept. 13, 1997.

Decided Dec. 12, 1997.

Gary S. Villanueva, Gail Gray, of counsel, New York City, for Defendant–Appellant Hampton.

Jay Louis Weiner, New York City, for Defendant–Appellant Rodriguez.

Jeremy F. Orden, New York City, for Defendant–Appellant Williams.

Stephanie M. Carvlin, New York City, for Defendant–Appellant Moye.

Michael F. Bachner, New York City, for Defendant–Appellant Thomas.

Theodore S. Green, Green & Willstatter, White Plains, NY, for Defendant–Appellant Piggott.

Daniel Meyers, New York City, for Defendant–Appellant Key.

Teresa A. Pesce, Assistant United States Attorney, Mary Jo White, United States Attorney, and Ira M. Feinberg, Assistant United States Attorneys, Southern District of New York, New York City, for Appellee.

Before: FEINBERG, WALKER, Circuit Judges, and REAL,* District Judge.

JOHN M. WALKER, Jr., Circuit Judge:

Defendants-appellants Rodney Hampton, Wayne Rodriguez, Jerry Williams, Fred Moye, Michelle Thomas, James Piggott, and Christian Key (hereinafter "appellants") appeal from judgments of conviction entered by the United States District Court for the Southern District of New York (Thomas P. Griesa, *Chief District Judge*). The appellants raise numerous claims of error on appeal. In a summary order entered simultaneously with this opinion, we dispose of all but three of these claims and resolve them against the appellants. We consider here the appellants' remaining three claims on appeal: (1) that Congress exceeded its authority under the Commerce Clause, U.S. Const. art. I, § 8, in criminalizing money laundering, 18 U.S.C. § 1956; (2) that the indictment was invalid on its face because it failed to allege that the financial transactions engaged in by the appellants affected interstate or foreign commerce; and (3) that the government improperly applied for a "roving wiretap" of

three cellular telephones without securing the authorization of a high-level official of the Department of Justice, in violation of 18 U.S.C. § 2518(11)(b)(i). We conclude that Congress was well within its authority when it enacted 18 U.S.C. § 1956, that the indictment sufficiently apprised the appellants of the charges against them, and that the government neither sought nor implemented a "roving wiretap" within the meaning of 18 U.S.C. § 2518(11), and therefore was not required to secure high-level authorization.

## BACKGROUND

The indictment in this case charged the appellants with various criminal offenses in connection with their participation in a nationwide narcotics trafficking and money laundering ring. After a ten-week jury trial, the appellants were convicted on most of these charges. All appellants, except for Michelle Thomas, were found guilty of committing various substantive narcotics trafficking offenses in violation of 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1); all appellants, except for Michelle Thomas and Christian Key, were found guilty of conspiring to commit narcotics offenses in violation of 21 U.S.C. § 846; [1] all appellants, except for Rodney Hampton and Christian Key, were convicted of substantive money laundering offenses in violation of 18 U.S.C. § 1956(a)(1); all appellants, except for Christian Key and James Piggott, were convicted of conspiracy to launder money in violation of 18 U.S.C. § 1956(h); and, finally, James Piggott was convicted of managing a continuing criminal enterprise, in violation of 21 U.S.C. § 848. All of the appellants received substantial sentences, ranging from 30 months' imprisonment for Michelle Thomas to life imprisonment for James Piggott. The details of their sentences are not relevant to the claims considered in this opinion.

---

\* The Honorable Manuel L. Real of the United States District Court for the Central District of California sitting by designation.

1. At sentencing, the district court vacated James Piggott's conviction for conspiring to violate the narcotics laws in light of *Rutledge v. United States*, 517 U.S. 292, 298–307, 116 S.Ct. 1241, 1246–51, 134 L.Ed.2d 419 (1996), where the Supreme Court held that conspiracy to commit a narcotics offense, 21 U.S.C. §§ 812, 841, is a lesser included offense of engaging in a continuing criminal enterprise, 21 U.S.C. § 848. Because Piggott was convicted of both crimes, the district court vacated the lesser conviction in order to avoid double jeopardy.

Much of the significant evidence supporting the narcotics and money laundering convictions came from wiretaps that the government placed on three cellular telephones used by appellant Piggott ("the New York wiretaps"). On March 28, 1994, the United States Attorney successfully applied in the United States District Court for the Southern District of New York (Louis L. Stanton, *District Judge*) for a wiretap of these three phones. The application, authorized by a Deputy Assistant Attorney General, specified the telephone numbers and electronic serial numbers of the target cellular telephones.

The affidavit in support of the application stated that there was probable cause to believe that the target cellular telephones were being used to further illegal narcotics and money laundering activities. The FBI and the IRS were conducting an ongoing investigation of the narcotics trafficking and money laundering ring, and Atlanta telephones already subject to interception had been used to make calls to the New York cellular telephones. The affidavit affirmed that the New York wiretaps were necessary because other investigative procedures were unlikely to succeed. After the wiretaps were approved by the district court, the government commenced tapping two of the telephones.[2] Interception continued for 22 days.

Prior to trial, the appellants moved to suppress the New York wiretaps on various grounds. At a pretrial hearing, the appellants argued, *inter alia*, that all evidence from the New York wiretaps should be suppressed because a wiretap on a cellular telephone is a "roving wiretap" within the meaning of 18 U.S.C. § 2518(11) requiring authorization by one of certain senior Justice Department officials which had not been obtained. Unlike standard wiretaps, "roving wiretaps" do not require specification of "the nature and location of the facilities from which or the place where the communication is to be intercepted." 18 U.S.C. § 2518(11). A Deputy Assistant Attorney General may not authorize a "roving wiretap" application.

The district court denied the motion to suppress, concluding that the wiretaps at issue were not "roving wiretaps."

At trial, in addition to wiretap evidence, the government relied on direct surveillance; physical evidence of drug sales, including drug records, seized from members of the crime ring; the testimony of cooperating witnesses; and the testimony of an undercover IRS agent who briefly infiltrated the ring by posing as a person able to exchange untraceable bank checks for large amounts of cash. Over the course of a few days, the agent laundered over two million dollars for the ring. The checks were drawn on Citibank, and most of these were negotiated through foreign banks.

The appellants assert, *inter alia*, that the statute criminalizing money laundering, 18 U.S.C. § 1956, is unconstitutional; that the indictment was insufficient on its face because it failed to allege a nexus with interstate commerce; and that the district court erred in declining to suppress New York wiretap evidence.[3]

## DISCUSSION

### I.

Appellant Moye challenges the constitutionality of the federal money laundering statute, 18 U.S.C. § 1956. He alleges that in enacting the statute, Congress exceeded its authority under the Commerce Clause, U.S. Const. art. I, § 8, in that the statute criminalizes conduct which could take place entirely intrastate and which fails to have a substantial effect on interstate commerce. Therefore, he contends that his convictions for engaging in money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i), and for conspiring to engage in money laundering, in violation of 18 U.S.C. § 1956(h), cannot stand.

Moye, like many criminal defendants in the past two years, relies primarily on *United*

---

**2.** A third telephone had been abandoned by the time wiretapping was to begin.

**3.** Although these claims were raised originally by appellants Piggott, Moye and Key, all appellants have joined in the arguments made by other appellants pursuant to Rule 28(i) of the Federal Rules of Appellate Procedure.

*States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). In *Lopez*, the Supreme Court held that Congress exceeded its authority under the Commerce Clause in enacting the Gun Free School Zones Act of 1990, 18 U.S.C. § 922(q), which made it a federal offense " 'for any individual knowingly to possess a firearm at a place that the individual knows, or has reasonable cause to believe, is a school zone.' " *Lopez*, 514 U.S. at 551, 115 S.Ct. at 1626 (quoting 18 U.S.C. § 922(q)(1)(A)). The Court reached this conclusion because the Gun Free School Zones Act "neither regulate[d] a commercial activity nor contain[ed] a requirement that the possession be connected in any way to interstate commerce." 514 U.S. at 551, 115 S.Ct. at 1626.

The *Lopez* Court identified three broad categories of activity which Congress may regulate pursuant to its Commerce Clause power. "First, Congress may regulate the use of the channels of interstate commerce." *Id.* at 558, 115 S.Ct. at 1629 (citing *United States v. Darby*, 312 U.S. 100, 114, 61 S.Ct. 451, 457, 85 L.Ed. 609 (1941); *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 256, 85 S.Ct. 348, 356, 13 L.Ed.2d 258 (1964)). "Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities." 514 U.S. at 558, 115 S.Ct. at 1629 (citing, *inter alia, Perez v. United States*, 402 U.S. 146, 150, 91 S.Ct. 1357, 1359–60, 28 L.Ed.2d 686 (1971); Houston, E & W T R Co., Houston & *Shreveport R. Co. v. U.S.*, 234 U.S. 342, 34 S.Ct. 833, 58 L.Ed. 1341 (1914)). Third, "Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce, ... i.e., those activities that substantially affect interstate commerce." 514 U.S. at 558–59, 115 S.Ct. at 1629–30 (citing, *inter alia, Maryland v. Wirtz*, 392 U.S. 183, 196, n. 27, 88 S.Ct. 2017, 2023–24, n. 27, 20 L.Ed.2d 1020 (1968)).

Noting that § 922(q) clearly fell without the first two categories, the *Lopez* Court ruled that it could not be sustained under the third. First, the Court explained that "[w]here economic activity substantially affects interstate commerce, legislation regarding that activity will be sustained." 514 U.S. at 560, 115 S.Ct. at 1630. However, § 922(q) "ha[d] nothing to do with 'commerce' or any sort of economic enterprise...." *Id.* at 561, 115 S.Ct. at 1630–31. Second, the Court found that "§ 922(q) contain[ed] no jurisdictional element which would ensure, through case-by-case inquiry, that the firearm possession in question affect[ed] interstate commerce." *Id.* Therefore, the Court struck down the statute.

Like § 922(q), 18 U.S.C. § 1956(a)(1) does not fall within the first two Commerce power categories, and must be justified, if at all, as a regulation of activity having a substantial effect on interstate commerce. However, the similarities between § 1956 and § 922(q) end there. Section 1956(a)(1) provides:

(a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—

(A)(i) with the intent to promote the carrying on of specified unlawful activity; or ...

(B) knowing that the transaction is designed in whole or in part—

(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; ...

shall be guilty of the felony of money laundering. The statute defines "financial transaction" as follows:

(c)(4) the term "financial transaction" means (A) a transaction which *in any way or degree affects interstate or foreign commerce* (i) involving the movement of funds by wire or other means or (ii) involving one or more monetary instruments, or (iii) involving the transfer of title to any real property, vehicle, vessel, or aircraft, or (B) a transaction involving the use of a financial institution *which is engaged in, or the*

*activities of which affect, interstate or foreign commerce in any way or degree.*

18 U.S.C. § 1956(c)(4) (emphasis added).

A review of the subject matter of § 1956 reveals that it avoids the disabilities of § 922(q). Unlike § 922(q), § 1956 has everything "to do with commerce," *Lopez*, 514 U.S. at 561, 115 S.Ct. at 1630–31. Money laundering is a quintessential economic activity. Indeed, it is difficult to imagine a more obviously commercial activity than engaging in financial transactions involving the profits of unlawful activity. This is particularly so where the intent of the transaction is to conceal the source of those profits or to promote the unlawful activity and thereby yield even greater economic rewards.

Furthermore, money laundering is not only a commercial activity, but it *"substantially* affects *interstate* commerce." *Id.* at 560, 115 S.Ct. at 1630 (emphasis added). As we have held only recently, "[m]oney laundering is the archetypical activity which, while in isolation may not affect interstate commerce, undoubtedly will have ramifications in interstate commerce when taken in the aggregate." *United States v. Leslie*, 103 F.3d 1093, 1100 (2d Cir.1997), *cert. denied sub nom.*, *Williams v. United States*, — U.S. ——, 117 S.Ct. 1713, 137 L.Ed.2d 837 (1997).

The conclusion that § 1956 concerns obviously economic activity having a substantial effect on interstate commerce is especially clear in appellant Moye's case. Section 1956 is not a free-standing statute; it criminalizes only financial transactions involving the proceeds of unlawful activity specified in § 1956(c)(7). One such specified unlawful activity—the one underlying the appellants' money laundering convictions—is narcotics trafficking, as defined by the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801 *et seq.* (the "Controlled Substances Act"). We have repeatedly held that the "Controlled Substances Act concerns an obviously economic activity" substantially affecting interstate commerce, namely, narcotics trafficking, and have sustained the Act against criminal defendants' *Lopez* challenges. *United States v. Genao*, 79 F.3d 1333, 1337 (2d Cir.1996); *accord*

*Proyect v. United States*, 101 F.3d 11, 13 (2d Cir.1996) (per curiam). Our search of the caselaw has uncovered no circuit court decision holding otherwise. *See, e.g., United States v. Lerebours*, 87 F.3d 582, 584–85 (1st Cir.1996), *cert. denied*, — U.S. ——, 117 S.Ct. 694, 136 L.Ed.2d 617 (1997); *United States v. Leshuk*, ·65 F.3d 1105, 1112 (4th Cir.1995); *United States v. Tucker*, ·90 F.3d 1135, 1140 (6th Cir.1996); *United States v. Rogers*, 89 F.3d 1326, 1338 (7th Cir.1996), *cert. denied*, — U.S. ——, 117 S.Ct. 495, 136 L.Ed.2d 387 (1996); *United States v. Bell*, 90 F.3d 318, 320–21 (8th Cir.1996); *United States v. Kim*, 94 F.3d 1247, 1249 (9th Cir.1996); *United States v. Wacker*, 72 F.3d 1453, 1475 (10th Cir.1995); *United States v. Edwards*, 98 F.3d 1364, 1369 (D.C.Cir.1996), *cert. denied*, — U.S. ——, 117 S.Ct. 1437, 137 L.Ed.2d 544 (1997). As Moye's drug trafficking activity clearly is a proper subject· for federal regulation, his conviction for money laundering—based as it is on his disposition of the proceeds of drug trafficking—necessarily involves activity regulable by the federal government. *Cf. Bell*, 90 F.3d at 320–21 (rejecting *Lopez* challenge to 18 U.S.C. § 924(c)(1) because violation of § 924(c)(1) requires violation of § 841(a)(1), and § 841(a)(1) is valid under Commerce Clause); *United States v. Brown*, 72 F.3d 96, 97 (8th Cir.1995) (per curiam), *cert. denied*, 518 U.S. 1033, 116 S.Ct. 2581, 135 L.Ed.2d 1095 (1996) (same); *Tucker*, 90 F.3d at 1140–41 (basing rejection of *Lopez* challenge to 21 U.S.C. § 860(a), doubling penalties for narcotics trafficking in school zone, on federal jurisdiction over underlying felony of narcotics trafficking); *Rogers*, 89 F.3d at 1338 (same for 21 U.S.C. §§ 856(a)(1), 860(a), 861(a)(1), 859(a)). Both on its face and as applied to Moye's conviction for laundering the proceeds of narcotics trafficking, § 1956 therefore regulates activity having a substantial effect on interstate commerce.

Also, unlike § 922(q), § 1956 contains a "jurisdictional element which ... ensure[s], through case-by-case inquiry, that" the money laundering statute will reach conduct affecting interstate commerce. *Lopez*, 514 U.S. at 561, 115 S.Ct. at 1630–31. Section 1956(c)(4) limits the reach of the statute to

transactions "affect[ing] interstate or foreign commerce" in "any way or degree" and to transactions involving financial institutions "engaged in, or the activities of which affect, interstate or foreign commerce in any way or degree." The inclusion of these jurisdictional elements precludes any serious challenge to the constitutionality of the money laundering statute as beyond the Commerce power, because it guarantees "a legitimate nexus with interstate commerce." *See, e.g., United States v. Hernandez,* 85 F.3d 1023, 1030–31 (2d Cir.1996) (18 U.S.C. §§ 922(g)(1) and 922(k) contain jurisdictional element missing in *Lopez* ); *United States v. Sorrentino,* 72 F.3d 294, 296 (2d Cir.1995) (same for 18 U.S.C. § 922(g)); *United States v. Sirois,* 87 F.3d 34, 40 (2d Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 328, 136 L.Ed.2d 241 (1996) (18 U.S.C. § 2251(a)); *United States v. Bell,* 70 F.3d 495, 497–98 (7th Cir.1995) (§ 922(g)).

Finally, we note that while we have not explicitly upheld § 1956 in the face of a *Lopez* challenge, we have done so implicitly. In *Leslie,* 103 F.3d at 1099–1100, we considered whether a conviction under § 1956 required the government to demonstrate a heightened nexus with interstate commerce after *Lopez.* In *Lopez* the Supreme Court explained that regulated activity must "substantially affect" interstate or foreign commerce "in order to be within Congress' power to regulate it under the Commerce Clause." 514 U.S. at 559, 115 S.Ct. at 1629–30. However, § 1956(c)(4) requires that individual instances of money laundering affect interstate or foreign commerce "in any way or degree." Before *Lopez,* all courts interpreting this language had interpreted it to require only a *de minimis* effect on interstate commerce. *See, e.g., United States v. Peay,* 972 F.2d 71, 74 (4th Cir.1992). In *Leslie,* we held that this burden was not increased by *Lopez,* reasoning that *Lopez* demands only that all of the regulated activity, taken in the aggregate, substantially affect interstate or foreign commerce. *See Leslie,* 103 F.3d at 1100; *United States v. Westbrook,* 119 F.3d 1176, 1191–92 (5th Cir. 1997); *United States v. Grey,* 56 F.3d 1219, 1224 (10th Cir.1995); *cf. United States v. Farrish,* 122 F.3d 146, 147–48 (2d Cir.1997) (post-*Lopez;* jurisdictional element of Hobbs Act satisfied by *de minimis* effect on interstate commerce); *United States v. Harrington,* 108 F.3d 1460, 1467 (D.C.Cir.1997) (same); *United States v. Bolton,* 68 F.3d 396, 398–99 (10th Cir.1995), *cert. denied,* 516 U.S. 1137, 116 S.Ct. 966, 133 L.Ed.2d 887 (1996) (same); *United States v. Ripinsky,* 109 F.3d 1436, 1444 (9th Cir.1997) (jurisdictional element of 18 U.S.C. § 1957 satisfied if each individual financial transaction "has a minimal effect on interstate commerce that, through repetition by others similarly situated, could have a substantial effect on interstate commerce.").

■ In its holding that *Lopez* did not increase the interstate commerce nexus required to sustain a federal conviction for money laundering, *Leslie* held implicitly that, after *Lopez,* the money laundering statute remained a constitutional exercise of Congress' commerce clause power. Indeed, in *Leslie* we made all the findings necessary to support today's holding: that money laundering is an inherently economic activity, and that, when repeated and taken in the aggregate, individual instances of money laundering have a substantial affect on interstate commerce. 103 F.3d at 1100. We failed only to take these observations to their logical conclusion. We do so now, and hold that Congress did not exceed its authority under the Commerce Clause when it enacted 18 U.S.C. § 1956.

## II.

■ Appellant Piggott challenges the sufficiency of the indictment on its face because it does not expressly allege that the financial transactions which formed the basis of his conviction for money laundering affected interstate or foreign commerce. We disagree.

At common law, the slightest technical error could render an indictment insufficient on its face. However, modern criminal law and procedure have abandoned the formal rigidity of an earlier era. *See Russell v. United States,* 369 U.S. 749, 762, 82 S.Ct. 1038, 1046, 8 L.Ed.2d 240 (1962). "Convictions are no longer reversed because of minor and technical deficiencies which did not prejudice the accused." *United States v. Wydermyer,* 51

F.3d 319, 324 (2d Cir.1995) (quoting *Smith v. United States,* 360 U.S. 1, 9, 79 S.Ct. 991, 996–97, 3 L.Ed.2d 1041 (1959)). As Professor Wright has explained, "[t]he precision and detail formerly demanded are no longer required, imperfections of form that are not prejudicial are disregarded, and common sense and reason prevail over technicalities." Charles Alan Wright, *Federal Practice and Procedure: Criminal 2d* § 123, at 347 (1982).

■ Rule 7(c)(1) of the Federal Rules of Criminal Procedure provides: "The indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." The indictment must sufficiently "inform the defendant of the charges he must meet" and must provide "enough detail" so that the defendant "may plead double jeopardy in a future prosecution based on the same set of events." *United States v. Stavroulakis,* 952 F.2d 686, 693 (2d Cir.1992). *Accord, United States v. Green,* 964 F.2d 365, 372 (5th Cir.1992).

■ "The scrutiny given an indictment also depends on the timing of the defendant's objection." *Wydermyer,* 51 F.3d at 324 (citing *United States v. Thompson,* 356 F.2d 216, 225–26 (2d Cir.1965)). Where, as here, the defendants did not challenge the indictment on these grounds before or during trial, "we interpret the indictment liberally in favor of sufficiency, absent any prejudice to the defendant." *Wydermyer,* 51 F.3d at 324. *Accord United States v. Lucas,* 932 F.2d 1210, 1218 (8th Cir.1991).

■ We agree with the appellants that in charging a violation of § 1956, the government must allege in the indictment that the financial transactions in question had some *de minimis* effect on interstate commerce.[4] Such a conclusion is required by the plain language of the money laundering statute. Section 1956(a)(1) prohibits persons from conducting certain "financial transactions." The statute provides that "the term 'financial transaction' means (A) a transaction which in any way or degree affects interstate of foreign commerce ... or (B) a transaction involving the use of a financial institution which is engaged in, or the activities of which affect, interstate or foreign commerce in any way or degree." 18 U.S.C. § 1956(c)(4). Thus, proof of a nexus with interstate commerce is necessary to establish the existence of a financial transaction, and proof of a financial transaction is needed to establish a violation of the statute.

Indeed, our holding in *Leslie* would appear to resolve any remaining question of whether proof of a nexus with interstate commerce is needed to find a violation of the statute in individual cases. If "evidence that the individual transaction at issue had a *de minimis* effect on interstate commerce" is required to establish a violation of § 1956, *Leslie,* 103 F.3d at 1100, then it would seem that such an effect should be specifically alleged and proven. Because Congress prohibited money laundering only when the individual financial transaction at issue affects interstate or foreign commerce, proof of a nexus with interstate or foreign commerce is an essential element of the crime of money laundering. *See id.* at 1101; *United States v. Heater,* 63 F.3d 311, 318 (4th Cir.1995), *cert. denied,* 516 U.S. 1083, 116 S.Ct. 796, 133 L.Ed.2d 744 (1996); *Grey,* 56 F.3d at 1223–24; *United States v. Kunzman,* 54 F.3d 1522, 1526–27 (10th Cir.1995); *United States v. Baker,* 985 F.2d 1248, 1252 (4th Cir.1993).

In the present case, we conclude that the indictment was sufficient on its face. Plainly, the indictment was defective in failing to explicitly allege a nexus with interstate or foreign commerce. However, Piggott was not prejudiced by this omission. The indictment alleges that several of the appellants conspired to "launder[ ] monetary instruments," "by delivering narcotics proceeds" of approximately $4,000,000 "which was to be converted to cashier's checks," and "by delivering money to individuals who would arrange ... remit[ance] to narcotics suppliers." As we have previously observed, narcotics trafficking, *see Genao,* 79 F.3d at 1333–35, and money laundering, *see Leslie,* 103 F.3d at 1100, are activities which, in the aggregate, will undoubtedly affect interstate commerce. Construing the indictment liberally

---

**4.** In *Wydermyer,* we noted this issue, but declined to resolve it. *See* 51 F.3d at 325.

in light of the absence of an objection to it in the district court, *Wydermyer,* 51 F.3d at 324, we conclude that the appellants were fairly apprised that the government was charging them with engaging in financial transactions having at least a *de minimis* effect on interstate commerce. *Cf. id.* at 325 (indictment sufficiently apprised defendant of charge because "transaction involving illegal international arms sales necessarily affects interstate or foreign commerce").

Although we conclude that the allegations in the indictment were sufficient in this case to imply the necessary effect on interstate or foreign commerce, we add that the government easily could have avoided this challenge by being explicit in its charging instrument. By failing specifically to include all necessary elements of the offense, the government forces appellate courts to comb through indictments and decide whether, in retrospect, they come close enough to obeying the law. The better course would be for the government to be more careful in the first instance. *Cf. Leslie,* 103 F.3d at 1103 ("There is nothing more crucial, yet so strikingly obvious, as the need to prove the jurisdictional element of a crime. Sadly, we are forced to continue reversing convictions, as long as prosecutors remain lax in the simpler aspects of their jobs.").

### III.

■ Appellant Key contends that the district court erred by failing to suppress all evidence derived from the New York wiretaps. He argues that the government effectively secured a "roving wiretap" on three tapped cellular phones, but did so without receiving the high-level authorization required for such wiretaps by 18 U.S.C. § 2518(11). We disagree.

Title 18 U.S.C. § 2518 of the United States Code provides for the interception of wire, oral, and electronic communication. As part of its application to the district court for approval of a wiretap, the government must provide "a particular description of the nature and location of the facilities from which or the place where the communication is to be intercepted." 18 U.S.C. § 2518(1)(b)(ii). Upon satisfying itself that the government

has met this burden, the district court must specify in its order, *inter alia,* "the nature and location of the communications facilities as to which, or the place where, authority to intercept is granted." 18 U.S.C. § 2518(4)(b).

■ Section 2518(11) provides for the authorization of "roving wiretaps" where the government is unable to specify with particularity "the facilities from which, or the place where, the communication is to be intercepted." Wire or electronic communications can be intercepted under § 2518(11)(b) if

(i) the application is by a Federal investigative or law enforcement officer and is approved by the Attorney General, the Deputy Attorney General, the Associate Attorney General, an Assistant Attorney General, or an acting Assistant Attorney General;

(ii) the application identifies the person believed to be committing the offense and whose communications are to be intercepted and the applicant makes a showing of a purpose, on the part of the person, to thwart interception by changing facilities; and

(iii) the judge finds that such purpose has been adequately shown.

Thus, a "roving wiretap" requires authorization from one of several senior Justice Department officials at the level of Assistant Attorney General or higher. *See United States v. Bianco,* 998 F.2d 1112, 1121 (2d Cir.1993). In contrast, a standard wiretap application may be authorized by a Deputy Assistant Attorney General designated to make such applications by the Attorney General. *See* 18 U.S.C. § 2516(1); *United States v. Nanfro,* 64 F.3d 98, 100 (2d Cir.1995) (per curiam), *cert. denied sub nom., Ingrao v. United States,* 516 U.S. 1060, 116 S.Ct. 738, 133 L.Ed.2d 688 (1996). The New York wiretap application in this case was authorized by a Deputy Assistant Attorney General, but not by any of the higher Justice Department officials whose authorization is required for "roving wiretaps."

There are two elements to Key's claim that the New York wiretaps were "roving wiretaps" requiring high-level authorization

pursuant to § 2518(11)(b)(i), and we easily dispose of each. First, Key claims that a cellular phone has no fixed location, and that it therefore would be impossible for the government or the district court to specify the facility from which or the place where the communication was to be intercepted. This is plainly incorrect. The government's affidavits in support of its application clearly identified the facilities to be tapped by their telephone numbers and by their electronic serial numbers. The requirements of 18 U.S.C. §§ 2518(1)(b)(ii) and 2518(4)(b) were therefore satisfied, and authorization by a Deputy Assistant Attorney General was sufficient. In sum, Key's argument—that because one may rove about with a cellular telephone interception of a cellular telephone is necessarily a "roving wiretap"—does not comport with the terms or purposes of the wiretap statute.

■ Second, Key argues that the government's affidavit in support of its application "contained all the essentials for a roving wiretap." Brief for Appellant Key at 30. Specifically, he points out that "[t]he agents knew that the target subject was shifting telephones continuously in order to thwart surveillance." In effect, Key argues that because the government arguably *could* have satisfied the requirements for a roving wiretap, it was obligated to apply for one. Key misunderstands the import of § 2518(11). The "roving wiretap" provision is an exception to the rule requiring the government to identify tapped telephones with particularity: it allows the government to intercept communications when the target, in an effort to avoid surveillance, continuously switches phones and locations so that "law enforcement officials may not know, until shortly before the communication, which telephone line will be used by the person under surveillance." S.Rep. No. 99–541, at 31, *reprinted in* 1986 U.S.C.C.A.N. 3555, 3585. Because of the danger that a roving wiretap might infringe unnecessarily on civil liberties, high-level authorization is required. But if the government is able to specify the facilities to be intercepted with particularity despite the target's efforts to thwart such surveillance, as was the case here, there is no need to resort to § 2518(11), and no need to receive high-level authorization. Thus, there is no merit to Key's argument.

In sum, the government did not secure a "roving wiretap" within the meaning of 18 U.S.C. § 2518(11). The district court did not err by declining to suppress evidence derived from the New York wiretap.

## CONCLUSION

For the foregoing reasons, and the reasons expressed in the summary order entered contemporaneously with this opinion, we affirm the judgments of conviction by the district court.