UNITED STATES of America, Plaintiff

v.

**Jose Susumo AZANO MATSURA, et al., Defendants.**

**Case No. 14cr388–MMA.**

United States District Court, S.D. California.

Signed Sept. 11, 2015.

Andrew G. Schopler, Helen H. Hong, William P. Cole, U.S. Attorney's Office, Southern District of California, San Diego, CA, for Plaintiff.

John C. Lemon, Law Office of John C. Lemon, Knut S. Johnson, Law Offices of Knut S. Johnson, San Diego, CA, for Defendant Jose Susumo Azano Matsura.

Michael L. Lipman, Jason M. Ohta, Duane Morris LLP, for Defendant Raveneet Singh.

## ORDER AFFIRMING TENTATIVE RULINGS;

## DENYING DEFENDANTS AZANO AND SINGH'S MOTIONS TO SUPPRESS WIRETAP EVIDENCE

MICHAEL M. ANELLO, District Judge.

In June 2013, a district judge in the Southern District of California authorized the interception of wire communications of retired San Diego Police Detective Ernesto Encinas, as well as electronic communications to and from a cellular telephone used by Encinas. Defendants Jose Susumo Azano Matsura ("Azano") and Ravneet Singh ("Singh") move to suppress all evidence of communications intercepted over Encinas' cell phone, as well as any evidence derived from those communications. *See* Doc. Nos. 110, 133. The parties appeared before the Court for a hearing on these and other motions on July 17, 2015. In anticipation of the hearing, the Court issued a tentative ruling denying both motions to suppress, in part, based on lack of

standing, and otherwise finding the motions moot. *See* Doc. No. 168. After hearing the oral arguments of counsel, the Court ordered the parties to submit supplemental briefing on the issues of standing, mootness, and the government's intended use of any derivative evidence at trial. *See* Doc. No. 171. Based upon the supplemental briefing, and for the reasons set forth below, the Court **AFFIRMS** its tentative rulings and **DENIES** Azano and Singh's motions to suppress.[1]

## BACKGROUND

According to the allegations set forth in the Superseding Indictment, Azano is a wealthy Mexican businessman who owns two houses in Coronado, California. At the time of his arrest in this case, he was an alien lawfully present in the United States on a B–1/B–2 non-immigrant visa. Based on his status, Azano is considered a "foreign national" under Title 2 of the United States Code, Section 441e, and is therefore prohibited from making donations and contributions—directly or indirectly—in support of any candidate for elective office in the United States at the federal, state, or local level. Through at least September 2013, Azano is alleged to have illegally and surreptitiously funneled his money into various political campaigns and committees, including those of three San Diego mayoral candidates and a committee supporting federal candidates. The Superseding Indictment details approximately $600,000 in such illegal donations and lists multiple occasions in which Azano was not identified as the true source of campaign donations or the donation was concealed.

Azano's co-defendant Singh is the president of Electionmall Inc. ("EMI"), a business that specializes in providing social media services to political campaigns throughout the world. Singh styles himself as a "campaign guru" and works principally out of offices in Washington, D.C. Through his company, Singh provided social media services to the candidates supported by Azano, who then funded EMI's services using a Mexico-based company to transmit payment to EMI's bank account. According to the government, neither Azano nor Singh provided any invoice or other bill of costs to the campaigns themselves.

Encinas is a retired San Diego Police Department detective and the owner of a private security and consulting business. Encinas oversaw Azano's protection detail and helped Azano make contributions to, and seek favors from, candidates and officeholders in San Diego. According to the government, as Encinas' involvement in Azano's campaign finance scheme emerged, it became evident that Encinas engaged in other criminal conduct, including bribing San Diego Police Department officers for inside information. As a result, the government launched an investigation into Encinas for honest services fraud. In June 2013, the government applied for a wiretap on Encinas' phone to further their investigation. The court authorized the wiretap and a 60–day period of interception ensued. The wiretap on Encinas' phone yielded one call with Azano (during the first 30–day period of interception after the initial wiretap order), and two calls with Singh (during the second 30–day period following the renewal of the wiretap application).[2]

---

1. Defendants have filed three separate motions for joinder in their co-defendants' supplemental briefs. *See* Doc. Nos. 181, 185, 186. The Court **GRANTS** the motions.

2. Encinas was ultimately charged with crimes related to the Azano campaign finance fraud scheme. In March 2014, Encinas pleaded guilty to conspiracy and tax fraud. *See* Case No. 14cr344–MMA, Doc. No. 34.

*DISCUSSION*

Azano and Singh move to suppress all evidence of the communications intercepted over Encinas' cell phone, and any derivative evidence, on grounds that the evidence was obtained in violation of the Fourth Amendment and Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title III"), 18 U.S.C. §§ 2510–2522. Defendants argue, among other things, that the government obtained the wiretap on Encinas' cell phone through subterfuge.[3] The affidavit submitted in support of the original wiretap application did not disclose any details of the government's ongoing investigation into Azano, Encinas, and others for campaign finance fraud. Rather, the affidavit only set forth allegations regarding Encinas' purported bribery scheme. Defendants assert that the government omitted all information related to Encinas' campaign finance activities intentionally because Title III does not authorize wiretaps to investigate campaign finance offenses.

The government opposes Defendants' motions. In addition to defending the integrity of the wiretap, the government argues that Azano and Singh only have standing to seek suppression of the communications to which they were a party. The government contends that it will not offer evidence at trial of those communications, nor any derivative evidence, and therefore Azano and Singh's motions are moot.

### 1. Relevant Law

■ Wiretap authorizations are governed by the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. §§ 2510–2522. Wiretap evidence procured in violation of Title III may be suppressed. *See United States v. Staffeldt*, 451 F.3d 578, 580 (9th Cir.2006). Section 2518(10)(a) provides, in pertinent part:

Any aggrieved person ... may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter, or evidence derived therefrom, on the grounds that—

(i) the communication was unlawfully intercepted;

(ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or

(iii) the interception was not made in conformity with the order of authorization or approval.

18 U.S.C. § 2518(10)(a).

■ Under federal law, any "aggrieved person" has standing to bring a motion to suppress the contents of intercepted wire or oral communications or evidence derived therefrom. *Id.* An "aggrieved person" means a person "who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed." *Id.* § 2510(11). A defendant bears the burden of proving that he has standing to contest the admissibility of the evidence in ques-

---

**3.** Defendants also argue that the affidavit in support of the original wiretap application, as well as the affidavit in support of the renewal application, failed to demonstrate the requisite necessity for a wiretap. Defendants further contend that the affidavits in support of the wiretap applications failed to establish probable cause with respect to Encinas' purported bribery scheme. Finally, Singh argues that the government failed to properly minimize the interceptions, as required by Title

III. Defendants request that the Court hold a *Franks* hearing to determine whether the government purposely misled the court with material omissions and misstatements in the affidavits submittd in support of the wiretap applications. Because the Court resolves the motions on standing and mootness grounds, it does not reach the merits of Defendants' substantive challenges to the wiretap and denies Defendants' request for a *Franks* hearing.

tion. *See United States v. Singleton,* 987 F.2d 1444, 1447 (9th Cir.1993).

## 2. *Analysis*

### a) *Standing*

■ Both Azano and Singh assert standing to seek suppression of all evidence obtained or derived from the wiretap on Encinas' phone. The government argues that Azano and Singh have standing to move to suppress only the evidence obtained or derived from the intercepted communications in which Azano and Singh were participants. Under Azano and Singh's logic, because they were parties to at least one intercepted communication, they have standing to move to suppress the contents of all intercepted communications. However, neither the wiretap statute nor applicable case law provides support for this expansive conceptualization of standing in the Title III context.

■ The rule of standing under Section 2518(10)(a) is no broader than the Fourth Amendment rule of standing. *United States v. Taketa,* 923 F.2d 665, 675 (9th Cir.1991) (citing *Alderman v. United States,* 394 U.S. 165, 175 n. 9, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969)). In *Alderman,* a case involving a claim that all incriminating evidence obtained through an illegal wiretap should be suppressed against all defendants, even those who were not parties to the bugged conversations, the Supreme Court unambiguously stated:

> The established principle is that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence. Co-conspirators and codefendants have been accorded no special standing.

*Alderman v. United States,* 394 U.S. at 171–72, 89 S.Ct. 961. Thus, "a defendant may move to suppress the fruits of a wire-tap only if his privacy was actually invaded; that is, if he was a participant in an intercepted conversation, or if such conversation occurred on his premises." *United States v. King,* 478 F.2d 494, 506 (9th Cir.1973). Stated another way, "when objecting to the introduction of a given call X, a defendant must show that he or she was a party to call X or that he or she has a privacy interest in the premises housing the tapped phone." *United States v. Suquet,* 547 F.Supp. 1034, 1038 (N.D.Ill.1982); *see also, United States v. Singleton,* 987 F.2d at 1449 (holding that "the demonstration of a legitimate expectation of privacy 'is a threshold standing requirement'") (citing *United States v. Cruz Jimenez,* 894 F.2d 1, 5 (1st Cir.1990)).

■ Here, Azano and Singh's phones were not tapped. They were not target subjects of the initial wiretap application. And Singh was not a participant in any intercepted conversations subsequent to the issuance of the initial wiretap order. Thus, Singh is not an "aggrieved person" who "may move to suppress the contents of any wire or oral communication intercepted" pursuant to the initial wiretap application. 18 U.S.C. § 2518(10)(a). Azano, on the other hand, was a participant in a single conversation intercepted subsequent to the issuance of the initial wiretap order. Thus, he acquires standing as an interceptee, and may move to suppress the single intercepted conversation in which he has a privacy interest.

■ With respect to the renewal wiretap application, Azano's privacy interests were not implicated despite being identified as a target subject in the application. Azano's phone was not tapped, and he was not a party to any intercepted conversations. Thus, he lacks standing to move to suppress any wiretap evidence gathered during the renewal period. Singh's phone was not tapped, nor was he

named as a target subject. However, Singh was a participant in two intercepted phone calls during the renewal period. Thus, he has standing to move to suppress the contents of the two intercepted calls.

The Court has carefully reviewed the Ninth Circuit case law cited by Azano and Singh in support of their contrary position, and generally disagrees with the manner in which Azano and Singh interpret those cases. For instance, Azano and Singh rely upon *United States v. King, supra,* 478 F.2d 494, for the proposition that an individual may seek suppression of all communications intercepted over a wiretap, even though he participated personally in only a few of those communications. In fact, the *King* court simply found that a particular defendant, Maack, in a conspiracy case had "standing to challenge the wiretap" because he had been a participant (albeit, indirect) in an intercepted communication. *Id.* at 506. And so, too, Azano and Singh have "standing to challenge the wiretap" on Encinas' phone as it relates to the communications to which they were a party and thus have a privacy interest. The circuit court did not address the scope of Maack's standing in *King,* but it clearly recited the rule set forth in *Alderman,* which supports the Court's conclusion here. *Id.* at 506 (defendant may move to suppress wiretap evidence "if he was a participant in an intercepted conversation, or if such conversation occurred on his premises.").

Azano and Singh also cite to *United States v. Oliva,* 705 F.3d 390 (9th Cir. 2012), a case in which the circuit court found the defendant had standing because he was named in the intercept order and law enforcement believed he was using the target telephones. In so holding, the court explained:

> Irrespective of Oliva's refusal to admit that the voices in the conversations intercepted included his own or that any

of the intercepts took place on his premises, Oliva was one of the individuals "against whom the interception[s] w[ere] directed." The affidavits in support of the surveillance orders included investigators' statements certifying their beliefs that he was using the individual cellular phones at issue. Oliva's conversations were the target of the surveillance. We therefore hold that Oliva has standing.

*Id.* at 395. The Ninth Circuit did not "implicitly overrule" its previous case law in *Oliva,* as Defendants suggest, nor did it adopt a "per se rule of standing to a defendant merely because he is the target, rather than the victim, of a search and seizure." *United States v. Cella,* 568 F.2d 1266, 1281 (9th Cir.1977). Rather, it accorded standing to a defendant who was the primary user of the target telephones and a participant in the intercepted conversations. This aspect of the circuit court's decision in *Oliva* is consistent with *Alderman, King,* and *Cella,* and did not effect a radical change in the law of standing in the Title III context.

In addition, Azano and Singh take umbrage with the government's reliance upon *United States v. Lara–Caneda,* No. 10cr3254–BTM, 2012 WL 1439166, 2012 U.S. Dist. LEXIS 58568 (S.D.Cal. Apr. 26, 2012). In *Lara–Caneda,* the court held that the defendant's standing to challenge evidence gathered from wiretaps on multiple target telephones was limited to the two telephones used to intercept conversations in which the defendant had participated. Azano and Singh maintain that because the court "was silent as to *which* conversations" Lara–Caneda had standing to move to suppress, "the implication is that Lara–Caneda had standing to suppress *all* calls intercepted" over the two telephones. *Singh Supp. Brief* at 6 (emphasis in original). However, the facts of the *Lara–Caneda* case distinguish it sig-

nificantly from this case. Of the two target telephones at issue, Lara–Caneda was the primary user of one of the phones and he participated in all 15 conversations intercepted over the second phone that the government intended to introduce at trial. As such, the court did not need to specify which conversations Lara–Caneda had standing to move to suppress—he had a clear privacy interest in all of the conversations. Here, Azano and Singh were neither the primary users of the target telephone nor did they participate in the overwhelming majority of the intercepted calls.

In sum, Azano and Singh's limited standing to seek suppression of wiretap evidence arises out of the specific conversations in which they have a privacy interest. To conclude otherwise would be contrary to the Congressional intent that courts construe Title III standing in accordance with standing requirements applied to suppression claims under the Fourth Amendment. *See Alderman*, 394 U.S. 165, 175–76, 89 S.Ct. 961; S.Rep. No. 1097, 90th Cong., 2d Sess.

b) *Mootness*

■ Azano and Singh argue that their motions are not moot because they have standing to seek suppression of all evidence obtained from the wiretap, as well as derivative evidence. For the reasons set forth above, the Court finds this argument unpersuasive. The government states that it will not use the single intercepted phone call between Encinas and Azano as evidence at trial, nor any evidence derived from the call. The government has sufficiently demonstrated that the single intercepted call between Azano and Encinas produced no derivative evidence. The communication was not included in any search warrant affidavits. This is not tremendously surprising, given the duration and content of the call—a one minute and 47 second conversation involv-

ing Encinas' presumably legitimate duties as Azano's head of security, not any criminal or otherwise suspect activities.

The government similarly avers that the two intercepted conversations between Singh and Encinas will not be admitted at trial. However, Singh asserts that his motion is not moot, for several reasons. First, Singh argues that the government will offer derivative evidence at trial because the application for a search warrant executed at his business headquarters relied upon the two intercepted calls to which he was a party. The government maintains that it will not seek to introduce any evidence at trial that was derived solely from Singh's two wiretapped conversations. According to the government, "[a]fter the wiretap investigation, agents referenced a Singh wiretap call in 4 global affidavits, which directly supported a total of 13 warrants and indirectly supported 3 follow-on or 'piggyback' warrants. In each affidavit, the Singh wiretap information was superfluous to the probable cause finding." *Gov't Supp. Brief* at 8. The Court has reviewed the government's thorough documentation regarding the limited use of the Singh wiretap calls in its post-wiretap warrants and is satisfied that any information garnered from the two intercepted conversations can be completely excised from the supporting affidavits without diminishing or otherwise undermining the existence of probable cause.

Second, Singh argues that his motion is not moot because in addition to the evidentiary sanction of suppression, he seeks dismissal of the Superseding Indictment based on the government's purported subterfuge in obtaining the initial wiretap order. As explained above, however, Singh lacks standing to challenge the legality of the initial wiretap application. With respect to the renewal application, the government complied with Section 2517(5) and

submitted "an additional application when the interceptions it obtain[ed] 'relate[d] to offenses other than those specified in the order of authorization and approval.'" *United States v. Homick*, 964 F.2d 899, 904 (9th Cir.1992) (citing 18 U.S.C. § 2517(5)). The Court finds no grounds to dismiss the charges against Singh pursuant to Title III or the Court's own supervisory powers.

In sum, after reviewing the substantial supplemental briefing submitted by the parties, the Court finds that Azano and Singh's motions are moot. Azano and Singh have standing to move to suppress only the intercepted communications in which they participated. The government will not introduce those communications into evidence at trial. The intercepted call between Azano and Encinas produced no derivative trial evidence, and the government has sufficiently demonstrated that the intercepted calls between Singh and Encinas were of minimal significance to post-wiretap investigative efforts.

### CONCLUSION

For the reasons set forth above, the Court **AFFIRMS** its tentative rulings and **DENIES** Defendants Azano and Singh's motions to suppress wiretap evidence based, in part, on a lack of standing. The Court otherwise **FINDS** the motions moot.

**IT IS SO ORDERED.**